443 So.2d 381 (1983)
Donnie WARREN and Russell Lee Wilkerson, Appellants,
v.
STATE of Florida, Appellee.
Nos. AQ-458, AR-2.
District Court of Appeal of Florida, First District.
December 30, 1983.
*382 Michael E. Allen, Public Defender, and Carl S. McGinnes, Asst. Public Defender, Tallahassee, for appellants.
Jim Smith, Atty. Gen., and Richard A. Patterson, Asst. Atty. Gen., Tallahassee, for appellee.
PEARSON, TILLMAN.
These consolidated appeals are by individual defendants who were jointly charged, tried and found guilty on two counts. The first count charged them with burglary, and the second count upon which they were convicted charged them with unlawfully trafficking in certain American Express Travelers Cheques, the property of Gulf Power Employee's Credit Union, which the defendants knew or should have known to be stolen. They were found guilty by a jury and sentenced, respectively, to five years imprisonment upon the burglary count and to a consecutive fifteen year term for trafficking in stolen property. We find that each defendant is entitled to a reversal of his conviction upon the burglary charge because of an insufficiency of evidence; however, we affirm their convictions for trafficking in stolen property.
Sometime during the night of July 14-15, 1982, a safe, disguised to look like a credenza and containing approximately $24,000 in negotiable American Express Traveler's Cheques, 200 blank Traveler's Express money orders, and $400 in cash, was stolen from the Gulf Power Employee's Credit Union. There is no direct evidence as to who actually perpetrated the burglary, nor was the safe ever found.
The State's primary witness, a prostitute named Linda King White, testified that at 6:30 or 7 a.m. on July 16, 1982, she and a friend met appellant Warren at a hotel in Pensacola in an attempt to buy heroin and cocaine. Counsel for the defendants immediately objected to the anticipated testimony regarding drug usage as being irrelevant to the charges involved, and the jury was excused and a proffer made. At that time, White testified that she and her companion owed money to appellant Warren for some past drug deals and that Warren persuaded her apparently as a quid pro quo to cash some traveler's checks in his possession. White and Warren then went to various stores in Gulf Breeze, Florida, where White typically purchased inexpensive items with the checks so that she could reap the maximum amount of change. After gaining a sufficient amount of money, the two returned to Warren's house and ingested more drugs.
White returned to Warren's house the next afternoon, at which time she saw appellant Wilkerson give to a third person an envelope in which traveler's checks are typically stored. White, Warren, and this third party, Leon Barnett [who was tried separately and is the subject of a separate appeal to this court], then drove to Mobile, Alabama, where White again attempted to cash traveler's checks. However, at one store a salesclerk became suspicious and called the police, causing White to be arrested. White also related that prior to the Mobile trip appellants Wilkerson and Warren began laughing at how they had taken the traveler's checks from one Larry Blocker's car trunk by distracting him with an argument. The trial court found the sum of this testimony regarding the drug usage to be demonstrative of the relationship of the various parties and indicative of a part of the transaction being tried, and so it was admitted for the jury's consideration.
Appellants urge as they did before the trial court that White's testimony regarding the obtaining and ingestion of drugs was irrelevant and highly prejudicial. We disagree and find that the evidence as to the procurement and use of these drugs was relevant to the motive and means used to market the stolen traveler's checks. See Williams v. State, 110 So.2d 654 (Fla. 1959). Moreover, the evidence of drug procurement and consumption was so intertwined with the evidence of trafficking in the stolen checks that the testimony was necessary to an intelligent account of the crime. See Nickels v. State, 90 Fla. 659, 106 So. *383 479 (1925). This was the basis expressed by the trial judge in denying appellants' motion, and he will not be reversed in the absence of a showing of an abuse of discretion. See Welty v. State, 402 So.2d 1159 (Fla. 1981).
After White had concluded her testimony, the State called Larry Blocker, who testified that in the summer of 1982 he had been employed as a janitor by and worked at the Credit Union. When asked by the prosecutor whether he knew the two defendants, Blocker stated: "I seen them  when I was down in prison ," at which time the prosecutor attempted to interrupt any further statement. One of appellants' attorneys, however, interjected that the witness had not been allowed to complete his answer. Upon being apprised of the content of Blocker's statement, counsel for appellants moved for a mistrial. After the judge denied the mistrial motion, counsel made no subsequent request for a curative instruction.
While we agree that it was error to allow the admission of such testimony, see Marrero v. State, 343 So.2d 883 (Fla. 2d DCA 1977), we do not find that the error was so egregious as to merit a mistrial. The power to declare a mistrial and discharge the jury should be exercised with great care and caution and should be done only in cases of absolute necessity. See Salvatore v. State, 366 So.2d 745 (Fla. 1978); Flowers v. State, 351 So.2d 764 (Fla. 3d DCA 1977). Such a necessity does not exist in this case. There is no indication that the prosecutor purposely elicited such a statement; indeed, it affirmatively appears that he immediately recognized its impropriety and took action to ameliorate its prejudicial effects. As such, the most this error would seem to demand would be a curative instruction, which as noted was not requested by appellants' counsel. We therefore conclude that reversible error has not been demonstrated.
The State next called one Angela Gilcrest, another prostitute who had been arrested in Mobile for passing some of the stolen traveler's checks. The prosecutor displayed a transcript of a statement allegedly made by Gilcrest to the police after her arrest. When she testified that she could not recall being at the police station and that the transcript did not refresh her memory, she was made a court witness upon motion by the prosecution. She repeatedly stated that she did not recall the remarks she had allegedly made to the police. After appropriate objection, the prosecutor read her statement that implicated appellant Warren.
We agree that such a prosecutorial tactic is clearly improper. See Barnett v. State, 444 So.2d 967 (Fla. 1st DCA 1983), in which the State used an identical tactic against Leon Barnett, a co-defendant tried separately from appellants Wilkerson and Warren. While we do agree that this was error, we nevertheless conclude that under the facts of this case this error was harmless. The prosecution also presented without objection the testimony of Pensacola police officer James Enterkin, who testified that he took a recorded statement from Angela Gilcrest after her arrest. He testified that she had said she was taken to Mobile by appellants Warren and Wilkerson and upon their direction cashed traveler's checks for them. Further, the content of these improperly admitted statements by Gilcrest was merely cumulative to what the jury had already heard in a much more damaging form from Linda King White. Compare Barnett v. State, supra, where witness Gilcrest's statements were the principal evidence directly implicating Barnett in the criminal transaction charged. Since this improperly admitted evidence was cumulative only and the totality of the evidence otherwise clearly establishes appellants' guilt of the offense of unlawfully trafficking in stolen property, we find that the error was harmless. See Oliver v. State, 239 So.2d 637 (Fla. 1st DCA 1970), reversed on other grounds, 250 So.2d 888 (Fla. 1971).
As their fourth point, appellants urge that the trial court erred in denying their motions for judgment of acquittal *384 upon the charge of burglary. We agree, for other than the possession of recently stolen property there is nothing in the record to link these appellants to the burglary of the Gulf Power Employee's Credit Union. See Smith v. State, 194 So.2d 310 (Fla. 1st DCA 1966). The inference from the possession of recently stolen property was reasonably explained by the State's case-in-chief, where witness Linda King White noted appellants' joking about how they had taken the traveler's checks from Larry Blocker's car trunk by distracting him with an argument. See K.W.U. v. State, 367 So.2d 647 (Fla. 3d DCA 1979). The State's argument that Blocker was the burglar and that appellants were aiders and abettors in the burglary is but an inference upon an inference and cannot hold. See Busbee v. Quarrier, 172 So.2d 17, 22-23 (Fla. 1st DCA 1965), cert. den., 177 So.2d 474 (Fla. 1965).
Appellants' final point on appeal urges reversal for a new trial because of the claimed cumulative effect of the several putative errors discussed above. We find this argument to be without merit.
Accordingly, the judgments and sentences upon the convictions for unlawfully trafficking in stolen property are AFFIRMED, and the judgments and sentences upon the convictions for burglary are REVERSED.
AFFIRMED in part, REVERSED in part, and REMANDED for correction of appellants' sentences.
ERVIN, C.J., and JOANOS, J., concur.